UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KEVIN DONALD KOVACIC,

Plaintiff,

v.

Case No. 26-cv-1021-pp

A. KOHLMANN, R. SCHLOSSER
and FOND DU LAC COUNTY,

Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND OBJECTION TO PROCEDURAL SUPPRESSION OF CONSTITUTIONAL EVIDENCE AND JUDICIAL RECORD (DKT. NO. 6), GRANTING PLAINTIFF'S AMENDED MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 8), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR PERMISSION TO FILE ELECTRONICALLY (DKT. NO. 9) AND SCREENING AMENDED COMPLAINT**

---

On June 8, 2026, the plaintiff, who is representing himself, filed a complaint, dkt. no. 1, and motion for leave to proceed without prepaying the filing fee, dkt. no. 2. The court denied without prejudice the plaintiff's motion for leave to proceed without prepaying the filing fee because the statements in the motion were contradicted by his allegations in the complaint; the court said that by September 11, 2026, the plaintiff either could file an amended motion for leave to proceed without prepaying the filing fee or pay the filing fee. Dkt. No. 5 The court also dismissed the complaint without prejudice because the seventeen-page, single-spaced document failed to comply with Federal Rule of Civil Procedure 8(a)(2). Id.

The plaintiff since has filed a motion for reconsideration and objection to the procedural suppression of constitutional evidence and judicial record, dkt. no. 6, an amended complaint (under protest), dkt. no. 7, an amended motion for leave to proceed without prepaying the filing fee, dkt. no. 8, and a motion for permission to file electronically, dkt. no. 9. This order addresses the pending motions and screens the amended complaint.

## I. Plaintiff's Motion for Reconsideration and Objection to the Procedural Suppression of Constitutional Evidence and Judicial Record (Dkt. No. 6)

### A. Plaintiff's Arguments

The plaintiff filed a motion asking the court to reconsider its screening order and "formally object[ing]" to the court's erroneous conclusion that his complaint was "disorganized" or "repetitive." Dkt. No. 6 at 1. He argues that the court's "formatting and financial constraints actively suppress a historic, live violation of the brand-new, binding United States Supreme Court mandate in Chatrie v. United States, 146 S Ct. (decided July 2, 2026), while openly defying the established, final factual findings and active dockets of this very District." Id. The plaintiff argues that his case is one of the "worst abuses of the controversial Flock ALPR camera in history" and believes that the camera was used to "repeatedly stalk, detain and illegally search" him in retaliation for a previous suit challenging his arrest for hemp. Id. The plaintiff points to a sheriff's report and a public database tracking system in support of his argument. Id. at 2.

The plaintiff also alleges that the court erred in finding an "impermissible financial 'contradiction' regarding his defunct business entity, Wautoma Cannabis Queen LLC." Id. The plaintiff argues that in Kovacic v. Oconto County, Case No. 23-cv-642-WCG (E.D. Wis.), Judge Griesbach found that the plaintiff would be incapable of paying costs "now or anytime in the future." Id. He accuses the court of weaponizing "the name of a ruined, legally dissolved business entity" and treating a "23-year-old, 270,000 mile vehicle belonging to an entirely separate, divorced financial household as a disqualifying asset" in order to humiliate the plaintiff. Id. at 3.

The plaintiff also believes that the court is operating under a double standard because, in Jones v. Shayhorn, Case No. 25-cv-1886-LA (E.D. Wis.), Judge Adelman allowed a fifty-six-paragraph FLOCK ALPR Retaliation case to proceed. Id. at 4. The plaintiff asks the court vacate the "spatial and formatting" limitations, take judicial notice of other cases and apply the mandate in Chatrie. Id.

B. Analysis

Federal Rule of Civil Procedure 54(b) allows any order adjudicating fewer than all the claims to be revised at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. Galvan v. Norberg, 678 F.3d 581, 587 n.3 (7th Cir. 2012) (stating "Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of final judgment"). "The 'standard courts apply in reconsidering their decisions is generally the same under both Rule 59(e) and Rule 54(b).'" Cheese Depot, Inc.

v. Sirob Imports, Inc., Case No. 14-C-1727, 2019 WL 1505399 at *1 (N.D. Ill. Apr. 5, 2019) (quoting Morningware, Inc. v. Hearthware Home Prods., Inc., Case No. 09-C-4348, 2011 WL 1376920, at *2 (N.D. Ill. Apr. 12, 2011)).

Motions for reconsideration serve a very limited purpose in federal civil litigation: "to correct manifest errors of law or fact or to present newly discovered evidence." Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251 (7th Cir. 1987) (quoting Keene Corp. v. Int'l Fidelity Ins. Co., 561 F. Supp. 656, 665-66 (N.D. Ill. 1976), aff'd 736 F.2d 388 (7th Cir. 1984)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000) (quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). "Such motions are disfavored and should be 'rare.'" Acantha LLC v. DePuy Orthopaedics Inc., Case No. 15-C-1257, 2018 WL 2290715, at *1 (E.D. Wis. May 19, 2018) (quoting Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990)).

First, the court will address the plaintiff's assertion that in denying his motion to proceed without prepaying the filing fee, the court alleged an impermissible contradiction between his complaint and his motion. In his complaint, the plaintiff alleged that he "is"—present tense—a principal operator of a federally-compliant, licensed hemp business named Wautoma Cannabis Queen, LLC. Dkt. No. 1 at 2. The complaint—which the plaintiff filed on June 8, 2026 and which is dense, word-wise—did not say anything about the hemp

business being closed or defunct or out of business. It referred to the plaintiff as being the present-tense principal operator of the business. So when the court saw in the application to proceed without prepaying the filing fee—also filed June 8, 2026—that the plaintiff listed no employment and no income other than disability benefits and food stamps, the court perceived a contradiction.

In his motion to reconsider, the plaintiff says that on February 9, 2026, Judge Griesbach, in the district's Green Bay division, held in Kovacic v. Oconto County, Case No. 23-cv-642 (E.D. Wis.) that the plaintiffs in that case would not ever be capable of paying costs or participating in gainful employment. This court—the undersigned judge—was not aware of that case or that ruling at the time it denied the plaintiff's motion for leave to proceed without prepaying the filing fee. The judges of the Eastern District of Wisconsin collectively are assigned thousands of cases; they cannot manage those cases *and* read every decision by every one of their colleagues. But now that the plaintiff has identified that ruling by Judge Griesbach, the undersigned judge has reviewed the docket in that case and has read the ruling to which it appears the plaintiff refers. In Oconto County, the plaintiff did not ask Judge Griesbach for permission to proceed without prepaying the filing fee (as he is doing in this case); on May 22, 2023, the plaintiff paid the $402 filing fee in full. Id. at Dkt. No. 1. So Judge Griesbach never made a finding about whether the plaintiff had the ability to pay the initial $402 filing fee; this court *is* required to make

such a finding, because the plaintiff has asked to proceed without prepaying the filing fee.

The plaintiff had a jury trial, presided over by Judge Griesbach. At the end of that trial, he filed a notice of appeal. Id. at Dkt. No. 154. He also filed a motion for leave to *appeal* without prepaying the *appellate* filing fee. Id. at Dkt. No. 155. (The income information in that application was different than the income information the plaintiff has provided in this case, presumably because it reflected the plaintiff's income as of December 2025, the date on which he filed the application with Judge Griesbach.) Judge Griesbach granted that motion (although he seems to have been under the mistaken belief that the plaintiff had proceeded at the trial level without prepaying the filing fee). Id., Dkt. No. 163 at 1. As of January 2026 when he issued the order, then, Judge Griesbach felt that, based on the information the plaintiff had provided him, the plaintiff was not able to pay the $605 *appellate* filing fee.

The order to which the plaintiff appears to refer is a February 2026 order Judge Griesbach issued regarding whether the plaintiff should be required to pay the defendant the costs of the litigation. On January 7, 2026—after the trial had concluded—the Clerk of Court taxed the plaintiff costs in the amount of $2,279.72. Id. at Dkt. No. 164. The plaintiff asked Judge Griesbach to review that taxation of costs, arguing (among other things) that he was on a fixed income and that he and his then-wife relied on government benefits to support them. Id. at Dkt. No. 165, page 2. He also explained how the loss of his hemp business had caused him financial hardship. Id.

The decision to which the plaintiff refers—the one in which he says Judge Griesbach ruled that he would never be capable of paying costs—appears to be Judge Griesbach's February 9, 2026 order granting the plaintiff's motion and denying the defendants costs. Id. at Dkt. No. 172. Judge Griesbach based that ruling, in part, on the plaintiff's representations about his and his former wife's financial situations:

> . . . the court finds Plaintiffs have made a sufficient showing that they will be incapable of paying costs, either now or in the future. While it is impossible to predict the future, [the plaintiff] is currently on disability, and [his former wife] is awaiting a disability determination. Even if her application for disability is denied, she appears to have little income earning capacity. The amount of costs, $2,279.72, is relatively modest, but it appears that resuming any form of gainful employment is unlikely for either Plaintiff due to medical conditions from which each suffers.

Id. at page 4.

The court had no intention of "weaponizing" the name of the hemp business or to "fabricate" a financial conflict. It simply did not understand why the complaint listed the plaintiff as the operator of a business but the motion to proceed without prepaying the filing fee listed him as unemployed. If the court had had all the information that Judge Griesbach had in Case No. 23-cv-642, it likely would have granted the plaintiff's motion to proceed without prepaying the filing fee in the first instance.

The plaintiff also feels that he is being "forced to repeatedly state [his] indigent status as a humiliation tactic," and refers to another case in which he'd been asked to explain that status. This court had no intention to humiliate the plaintiff. People's financial circumstances can change. Indeed, as the court

has pointed out, the information that the plaintiff included in his December 23, 2025 motion for leave to appeal without prepaying the appellate filing fee before Judge Griesbach (id. at Dkt. No. 156) and his January 14, 2026 motion asking Judge Griesbach to review the taxation of costs (id. at Dkt. No. 165) is different from the information that he provided this court in his June 8, 2026 motion for leave to proceed without prepaying the filing fee in this case (Dkt. No. 2 in this case). That is very likely because, over time, his financial circumstances have changed. In his case, they have not changed for the better, but surprisingly, there are some litigants whose financial situations *do* improve over time. That is why the court requires plaintiffs (all plaintiffs, not just the plaintiff in this case) who seek leave to proceed without prepaying the filing fee to show an inability to pay the filing fee in each case that they file (if they don't otherwise pay the fee).

In his amended motion to proceed without prepaying the filing fee, the plaintiff explains that the hemp business "was destroyed by the Marinette/Oconto Drug Unit in 2022," and describes the business as a "failed" joint venture between himself and his former wife. Dkt. No. 8 at 4. This information explains the contradiction the court perceived between the original complaint and the original motion to proceed without prepaying the filing fee. The court will not grant the request to "reconsider" its ruling on the original motion to proceed without prepaying the filing fee—at the time, the court didn't have the information it has now—but it *will* grant the plaintiff's amended motion to proceed without prepaying the filing fee, as explained below.

As for the court's decision to give the plaintiff leave to amend the complaint, the original complaint is seventeen pages long, single-spaced text without paragraph breaks; the court issued an order stating that it was "disorganized, repetitive" and hard to follow because of what the court perceived were unnecessary and irrelevant allegations. Dkt. No. 5 at 3. The plaintiff formally objects to these characterizations, and "rejects" the court's requirement that he use pages two and three of the court's amended complaint form to file his amended complaint, with an additional five, double-spaced pages if those two pages are not enough. See Dkt. No. 5 at 4. The court now realizes that the words it used—"disorganized" and "repetitive"—were harsh. It would have been better for the court to more clearly explain the difficulty it was having. It is true that length isn't the only standard for a court to determine whether to allow a complaint to proceed past screening. But Fed. R. Civ. P. 8(a) requires a pleading (like a complaint) to contain "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim that shows the pleader is entitled to relief" and a demand for the relief sought. The Seventh Circuit has explained the reason for the "short and plain" requirement: "[L]ength may make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few allegations that matter." Kadamovas v. Stevens, 706 F.3d 843, 844 (7th Cir. 2013) (quoting U.S. *ex rel.* Garst, 328 F.3d 374, 378 (7th Cir. 2003)). "District judges are busy, and therefore have a right to dismiss a complaint that is so long that it imposes an undue burden on the judge, to the prejudice of other litigants seeking the

judge's attention." Id. In this case, the plaintiff provided so many details—as well as case citations, rhetorical questions and legal arguments—that the court found it difficult to determine the exact nature of the plaintiff's claims.

The plaintiff cites Jones v. Shayhorn, Case No. 25-cv-1886, as an example of a case in which a different judge allowed a much longer complaint to proceed. That case is pending before Judge Adelman, one of this court's colleagues. It is true that the complaint in Jones is longer than the plaintiff's—the Jones complaint is twenty-one pages long, double-spaced (and includes photos).[1] Jones, 25-cv-1886, Dkt. No. 1. But Judge Adelman was not required to screen the complaint in Jones because the plaintiff paid the $405 filing fee and is represented by counsel. (Judge Adelman ended up dismissing that complaint and allowing the plaintiff to amend; the amended complaint is twenty-six pages long, double-spaced. Id. at Dkt. No. 39.)

The fact that the plaintiff in Jones paid the filing fee matters, because under 28 U.S.C. §1915(e)(2)(B), in cases where someone asks to proceed without prepaying the filing fee, "the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious, . . . fails to state a claim upon which relief may be granted; or . . . seeks monetary relief against a defendant who is immune from such relief." That means that when a plaintiff asks to proceed without prepaying the filing fee, the court must "screen" the complaint to determine whether it states a claim. A court is not

[1] The plaintiff in Jones also attached evidentiary documents to the complaint, which means the total filing was more than twenty-one pages.

required to do that in cases where the plaintiff has not asked to proceed without prepaying the filing fee—cases like Jones.

This court was not trying to make it more difficult for the plaintiff to litigate his claims; although the court could not fully follow the original complaint, it was clear how strongly the plaintiff believes that his rights have been violated. The court was seeking the plaintiff's help in providing the court with a concise explanation of how his rights were violated, so that the court could give his claims the attention they deserve.

The court will deny the plaintiff's motion to reconsider.

## II. Plaintiff's Amended Motion for Leave to Proceed Without Prepayment of the Filing Fee (Dkt. No. 8)

In his amended motion for leave to proceed without prepaying the filing fee, the plaintiff states that he is not employed, not married, and has no dependents. Dkt. No. 5 at 1. He has monthly income of $1,180 that he receives from Social Security disability, id. at 2; he pays $800 a month in rent and an additional $100 in household expenses. Id. at 3. The plaintiff does not own a car, his home or any other property of value; he does not have any cash in a checking or savings account. Id. at 3-4. He explains that he has been on disability since 2016 when he was stabbed on vacation. Id. As the court has explained, he adds that his hemp business now is defunct and refers to his "then wife, Tammy." Id. As the court also has explained, the plaintiff has addressed the court's concerns about the inconsistences it perceived between his initial motion for leave to proceed without prepaying the filing fee and the complaint.

The court finds the plaintiff is not able to pay the filing fee and will grant his motion for leave to proceed without prepaying it. This does not mean that the plaintiff does not owe the filing fee; the Seventh Circuit has held that "every . . . person who proceeds [without prepaying the filing fee]" is "liable for the full fees," because "all [28 U.S.C.] § 1915(a) does for any litigant is excuse the pre-payment of fees." Robbins v. Switzer, 104 F.3d 895, 898 (7th Cir. 1997); see also Rosas v. Roman Catholic Archdiocese of Chi., 748 F. App'x 64, 65 (7th Cir. 2019) ("Under 28 U.S.C. § 1915(a), a district court may allow a litigant to proceed 'without prepayment of fees,' but not without ever paying fees.").

## III. Screening the Amended Complaint

### A. Amended Complaint

The plaintiff's amended complaint is eleven pages long. Dkt. No. 7. The typed portion is not double-spaced, and it is longer than the seven pages the court specified in its order, but it *is* easier to read and to follow. The plaintiff says that his amended complaint is filed "under protest, in response to the court's order that restricts the record of a massive Flock camera ALPR tracking dragnet initiated in retaliation for my civil rights lawsuit and jury trial from Kovacic v. Oconto." Dkt. No. 7 at 3. The court understands, but nonetheless appreciates the plaintiff's effort to make his claims easier for the court to understand.

According to the plaintiff, Deputy Schlosser initiated a traffic stop on December 28, 2024 for two "fake" reasons: a cracked mirror and factory standard sunshade. Id. The plaintiff alleges that Sargeant Kohlmann forced

him out of the car, subjected him to an "ambush style forced pat down," and executed an "intrusive investigation without any probable cause or detection of any cannabis odor." Id. at 3. The plaintiff says, "we were both USDA licensed hemp growers." Id. at 4. (The court presumes the plaintiff is referring to his then-wife and himself). The plaintiff alleges that hemp packages were seized during a "warrantless, non-consensual search of the trunk." Id. at 4. He asserts that Schlosser wrote in his report that the plaintiff's "car is all over Flock all day long." Id. The plaintiff believes that Fond du Lac County is allowing the widespread abuse of ALPR technology, and that that policy is sufficient to establish municipal liability under Monell. Id.

The plaintiff seeks nominal damages of $1 and compensatory and punitive damages to be determined by a jury. Id. at 5. He also asks the court to issue a permanent injunction forcing the defendants to strictly obey all existing Flock safety system policies. Id. at 5.

In a supplemental statement of claim attached to the complaint, the plaintiff clarifies that the car he was driving was owned by his ex-wife. Id. at 7. He believes that vehicle was blacklisted on a tracking network:

> The flock camera admission, combined with dispatcher Kettleson's background logging at 21:50:40 PM, confirms that the vehicle was permanently blacklisted on a warrantless automated tracking network. External logs (Exhibit B and D) confirm this unlawful "DI" drug tracking profile was maintained by the lead agency of the same drug unit that previously seized our hemp and arrested me in Oconto in 2022. Resulting in Kovacic v. Oconto. NETCDEG, in direct retaliation for my civil rights litigation against them. Fond du Lac County acted as the primary proxy enforcers of this retaliatory flock database custom by blindly obeying the flock alerts and stopping vehicles illegally, using imaginary violations to stop them, and illegal coercion to search, establishing municipal liability under Monell.

> The alert went out to 79,000 alpr cameras and 6,000 law enforcement agencies. Including Forest Park, Ohio. Who got the alert for the Cadillac on 4/15/25 listed as a drug dealing black sedan. As shown in Exhibit D.

Id. at 7.

The plaintiff alleges that the officers used the Flock Safety ALPR network "to stalk and hunt the car [the plaintiff] was driving across county lines." Id. at 9. He believes that the regional database profile was manually created and maintained by Wisconsin drug units "in direct retaliation for [his] protected First Amendment activity in filing Kovacic v. Oconto County." Id. According to the plaintiff, the April 28, 2026 traffic stop by the same officer involved in the Oconto County case proves that the alleged retaliation is ongoing. Id.

Under a section titled "MONELL LIABILITY AND SURVIVING PRE-DISCOVERY SCREENING," the plaintiff alleges that the "tracking dragnet is born out of 1st Amendment retaliation." Id. He says that the report confirms that "they" were tracking his vehicle "all day on flock." Id. He alleges:

> Defendant Fond du Lac County is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978) because it maintains a widespread municipal custom of deploying deputies to act on an automated Flock Safety network Alerts, to execute interstate stops on "vehicles of interest," by fabricating equipment violations, deliberately insulating its harassment from judicial review by issuing non-contestable warnings ("VW")."

Id. at 10.

The petitioner alleges that "this custom resulted in four separate, citationless highway stops executed by fond du lac sheriffs on [the plaintiff's] vehicles, within the exact same five-mile stretch of Interstate 41 between September 2022 and April 2026, including an aggressive April 8, 2026 stop by

a deputy who explicitly cited a male driving a female's vehicle and an unrecognized town name (Coloma) that has an almost identical zip code as fond du lac, as 'suspicious' activity." Id. at 10. The plaintiff asserts that he has met his burden to survive initial screening because the "records and body camera footage completely dispute the lawfulness of the detention and extraction." Id. The plaintiff believes that any time he drives through Fond du Lac County, he faces "a guaranteed threat of being pulled over for no reason." Id. at 11.

Exhibit A to the complaint identifies four allegedly unconstitutional traffic stops over the span of four years: September 2022 (stopped for driving seven miles over the speed limit and "forcibly searched for almost an hour"); December 28, 2024 (Kohlmann and Schlosser forcibly removed the plaintiff from the vehicle, conducted an unauthorized pat down and performed a nonconsensual warrantless search of his trunk); May 7, 2025 (Kohlmann initiated an independent traffic stop after "aggressively tailgating the vehicle for over 5 miles in rush hour traffic"); and April 8, 2026 (deputy engaged in a prolonged surveillance, stopped the plaintiff for an improper turn, and "offered shifting and inconsistent justifications for detention." Dkt. No. 7-1 at 3.

Exhibit C to the amended complaint includes the call detail report from the December 28, 2024 stop and states:

> STOPPED FOR OBSTRUCTED REAR WINDSHIELD AND DEFECTIVE LEFT OUTSIDE MIRROR. KEVIN VERY CONTRONTATIONAL AND ARGUMENTATIVE ON INITIAL APPROACH. KEVIN ON PROBATION FOR P/I THC. HAD HEMP IN THE VEHICLE INCLUDING A "POUND" OF HEMP FROM OCONTO

COUNTY SHERIFF'S EVIDENCE WHICH HAD BEEN RELEASED TO HIM. VW FOR VIOLATIONS BOTH RELEASED.

Id. at 5. The plaintiff also attached a warning/violation notice from April 8, 2026, in which he alleges that he was cited for driving without proof of insurance, but he says the citation was issued because he refused to stop recording the incident to show the officer his digital insurance card. Id. at 9.

B. Screening

In screening the amended complaint, the court determines whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). The complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him or her of a right secured by the Constitution or the laws of the United States, and that whoever deprived him or her of this right was acting under the color of state law. D.S. v. E. Porter C'nty Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. C'nty of Milwaukee,

570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015).

The allegations in the amended complaint are not in chronological order, but it appears that the amended complaint focuses on the December 28, 2024 traffic stop of the plaintiff. When a police officer decides to stop a vehicle, the stop must meet the reasonableness requirements of the Fourth Amendment. United States v. Rodriguez-Escalera, 884 F.3d 661, 667 (7th Cir. 2018). To pull a car over for a brief investigatory stop, a police officer must have "at least [an] articulable and reasonable suspicion" that the particular person stopped is breaking the law. Id. (citing Delaware v. Prouse, 440 U.S. 648, 663 (1979)). A seizure that is reasonable at its inception still may violate the Fourth Amendment if it is "prolonged beyond the time reasonably required to complete" the initial mission of the stop. Illinois v. Caballes, 543 U.S. 405, 407 (2005) (citing United States v. Jacobsen, 466 U.S. 109, 124 (1984)). Because the plaintiff challenges the reasons for the stop and the length of the stop, the court will allow him to proceed on the Fourth Amendment claim of an unreasonably prolonged stop.

The plaintiff also challenges the search of the trunk. The Fourth Amendment protects individuals from unreasonable searches. U.S. Const. Amend. IV. "The reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on

the other, the degree to which it is needed for the promotion of legitimate government interests." United States v. Knights, 534 U.S. 112, 118–19 (2001) (quoting Wyoming v. Houghton, 526 U.S. 295, 300 (1999)). This typically requires the government agent to have probable cause to conduct a search, which demands a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). The plaintiff alleges that he did not consent to the search and that there was no other basis for the search of the trunk. For screening purposes, the court will allow the plaintiff to proceed on an unlawful search claim against Schlossman and Kohlmann.

In his amended complaint, the plaintiff explains that the December 28, 2024 traffic stop revealed the extent to which Fond du Lac County relies on Flock cameras to make stops. The attached police report states that the plaintiff's "car [was] all over the Fox Valley all day long on Flock." Dkt. No. 7-1 at 5. The plaintiff attaches Exhibit A in which he states that he was subjected to four unconstitutional traffic stops; it appears that Kohlmann and Schlosser were involved only in the December 28, 2024 and May 7, 2025 traffic stops. Dkt. No. 7-1 at 3. With respect to the May 7, 2025 stop, the plaintiff alleges only that Kohlmann followed him for five miles, pulled him over at a gas station, "immediately returned" his identification and departed. Id.

The plaintiff may be arguing that these four stops—along the same stretch of Highway 41—reveal a county policy or practice of using the Flock cameras to track and stop him for no other reason than his car (perhaps his

ex-wife's car) had been flagged in the database. There is a second dimension to this claim in which the plaintiff asserts First Amendment retaliation; the plaintiff alleges that the "regional database profile was manually created and maintained by Wisconsin Drug units" because of the plaintiff's "protected First Amendment activity in filing Kovacic v. Oconto County." Dkt. No. 7 at 9.

Entities like Fond du Lac County "cannot be held liable for damages under 42 U.S.C. §1983 on a theory of respondeat superior for constitutional violations committed by their employees." Simpson v. Brown County, 860 F.3d 1001, 1005–06 (7th Cir. 2017); see Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658 (1978). "The critical question under *Monell* . . . is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the action of the entity's agents." Glisson v. Ind. Dep't of Corr., 849 F.3d 372, 379 (7th Cir. 2017). To allege a Monell claim, a plaintiff must plead that his rights were violated and that the municipal defendant was the "moving force" behind his constitutional injury. Monell, 436 U.S. at 691–95.

Liberally construing the complaint, as the court must at this stage, the plaintiff alleges that Fond du Lac County has a policy or practice of allowing officers to acquire and rely on information recorded by the Flock cameras to track the plaintiff's vehicle and stop him under false pretenses in violation of the Fourth Amendment. In Chartrie v. United States, 146 S. Ct. 2193, 2206 (2026), the United States Supreme Court held that the Fourth Amendment applies when officials tap into historical cell phone records that provide

information about the user's past movements. Although an automated license plate reader is not necessarily the equivalent of historical cell phone records, the court will allow the plaintiff's claim to continue past screening.

On the other hand, the plaintiff has not stated a First Amendment retaliation claim against any of the named defendants. He says that the "Wisconsin drug units" created the "regional database profile," but he has alleged no other facts to suggest that Fond du Lac County is retaliating against him for having previously filed a lawsuit against a different county. A Monell claim cannot rest on speculation or general allegations.

For the time being, the court will allow the plaintiff to proceed on his Fourth Amendment claims against the two officers and his Monell claim against Fond du Lac County based solely on the alleged policy or practice of accessing and using the Flock camera database to track the plaintiff's movement and to stop him without reasonable suspicion in violation of the Fourth Amendment.

## IV. Plaintiff's Motion for Permission to File Electronically as a Pro Se Litigant (Dkt. No. 9)

The plaintiff filed a separate motion asking the court for permission to use the electronic filing system to upload and file documents. Dkt. No. 9. He explains that he has a PACER account but has permission only to receive electronic notifications. Id. Because he resides in Coloma, Wisconsin and "physical delivery or mail delivery requires a significant geographic distance and transit time," he is concerned that short deadlines could create a "massive hardship." Id.

General Local Rule 5(a)(2) (E.D. Wis.) exempts self-represented parties from the district's electronic filing requirements. Section I(A)(1) of the court's Electronic Case Filing Policies and Procedures Manual states that parties who are representing themselves cannot file electronically unless authorized by the court. https://www.wied.uscourts.gov/e-filing/ecf-policies-and-procedures. This court does not grant self-represented parties leave to file electronically absent extraordinary circumstances.

There is a post office located at 145 N. Front Street in Coloma. The court does not anticipate any upcoming deadlines that would require a quick turnaround. In fact, the next step in the process is for the court to ask the U.S. Marshals Service to serve the complaint, and then for the defendants to answer or otherwise respond. If the plaintiff encounters difficultly complying with a deadline, he may file a motion requesting an extension and showing good cause why he needs it. At this point, the plaintiff has not established extraordinary circumstances necessary to warrant an exception from the court's policy and the court will deny his motion to file electronically.

## V. Conclusion

The court **DENIES** the plaintiff's motion for reconsideration and objection to the procedural suppression of constitutional evidence and judicial record. Dkt. No. 6.

The court **GRANTS** the plaintiff's amended motion for leave to proceed without prepaying the filing fee. Dkt. No. 8.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion for permission to file electronically as a *pro se* litigant. Dkt. No. 9.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the amended complaint (Dkt. No. 7) and this order on the defendants under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** the defendants to file a responsive pleading to the amended complaint.

Dated in Milwaukee, Wisconsin this 1st day of October, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**